David H. Krieger, Esq.
Nevada Bar No. 9086
HAINES & KRIEGER, LLC
8985 S. Eastern Ave., Suite 350
Henderson, NV 89123
Phone: (702) 880-5554
FAX: (702) 385-5518
Email: dkrieger@hainesandkrieger.com

Sean N. Payne, Esq.
Nevada Bar No. 13216
PAYNE LAW FIRM LLC
9550 S. Eastern Ave. Suite 253-A213
Las Vegas, NV 89123
702-952-2733
Fax: 702-462-7227
Email: seanpayne@spaynelaw.com

Matthew I. Knepper, Esq.
Nevada Bar No. 12796
Miles N. Clark, Esq.
Nevada Bar No. 13848
KNEPPER & CLARK LLC
10040 W. Cheyenne Ave., Suite 170-109
Las Vegas, NV 89129
Phone: (702) 825-6060
FAX: (702) 447-8048
Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| LYNN TRAVERS, and all similarly situated individuals, | : Civil Action No.: |
| | : |
| Plaintiffs, | : **COMPLAINT FOR DAMAGES** |
| | : **PURSUANT TO THE FAIR CREDIT** |
| v. | : **REPORTING ACT, 15 U.S.C. § 1681, ET** |
| | : **SEQ. AND FOR RELIEF UNDER THE** |
| EXPERIAN INFORMATION SOLUTIONS, INC., and SILVER STATE SCHOOLS CREDIT UNION, | : **DECLARATORY JUDGMENT ACT, 15** |
| | : **U.S.C. § 2201** |
| | : |
| | : **JURY TRIAL DEMANDED** |
| Defendants. | : |
| | : |

1

## JURISDICTION AND VENUE

1.    This Court has federal question jurisdiction because this case arises out of violation of federal law. 15 U.S.C. § 1681 *et seq.*; 28 U.S.C. § 1331; *Smith v. Community Lending, Inc.*, 773 F. Supp. 2d 941, 946 (D. Nev. 2011).

2.    This action arises out of Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681(x) ("FCRA"), and NRS 598C.

3.    Venue is proper in the United States District Court for the District of Nevada pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides in Clark County, the State of Nevada and because Defendant is subject to personal jurisdiction in the County of Clark, State of Nevada as it conducts business there. Venue is also proper because, the conduct giving rise to this action occurred in Nevada. 28 U.S.C. § 1391(b)(2). Further, Experian has a registered agent of service in Nevada and is listed with the Nevada Secretary of State as a foreign limited liability company doing business in Nevada.

## PARTIES

4.    Plaintiff Lynn Travers ("Plaintiff") is a natural person residing in the County of Clark, State of Nevada.

5.    Plaintiff, on behalf of herself and other similarly situated individuals ("Class 1," "Class 2," and "Class 3"), brings this action to challenge the actions of Experian, which has violated both the FCRA and NRS 598C.

6.    Plaintiff and all putative Class 1, Class 2, and Class 3 members are "consumers" as that term is defined by 15 U.S.C. § 1681a(c).

7.    Plaintiff and the members of Classes 1, 2, and 3 are also all "consumers" as that term is used in NRS 598C.

8.    Defendant Experian Information Solutions, Inc. ("Experian") is a "Consumer Reporting Agency" as that term is defined by 15 U.S.C. § 1681a(f) because it regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties, and uses interstate commerce to prepare and/or furnish the reports.  On information and belief, Experian is also a "reporting agency" for purposes of NRS 598C.  Experian is doing business in Nevada with its principal place of business in Ohio.

9.    Additionally, Experian is a "Consumer Reporting Agency that Compiles and Maintains Files on Consumers on a Nationwide Basis," as that term is defined under 15 U.S.C. § 1681a(p).

10.    Defendant Silver State Schools Credit Union ("SSSCU") is a corporation doing business in the State of Nevada.

11.    Defendant SSSCU is a furnisher of information as contemplated by 15 U.S.C. § 1681s-2(b) that regularly and in the ordinary course of business furnishes information to a consumer credit reporting agency.

12.    Additionally, Plaintiff is informed and believes, and thereon alleges, that SSSCU is a "person" as the term is defined by 15 U.S.C. § 1681a(b).

13.    Unless otherwise indicated, the use of Experian and/or SSSCU's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Experian.

## **INTRODUCTION**

14.    The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.  Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence,

which is essential to the continued functioning of the banking system. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to insure fair and accurate reporting, and to promote efficiency in the banking system.

15.    In addition to ensuring accuracy, Congress also enacted the FCRA to protect consumer privacy. Since CRAs have assumed such a vital role in assembling and evaluating consumer credit, the FCRA seeks to ensure that CRAs exercise these grave responsibilities with fairness, impartiality, and a respect for a consumer's right to privacy.

16.    15 U.S.C. § 1681b(f) prohibits the use and obtaining of consumer reports "for any purpose unless (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with Section 1681e of this title by a prospective user of the report through a general or specific certification."

17.    The FCRA defines "consumer report" broadly, as "any written, oral, or other communication of any information by a CRA bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title." 15 U.S.C. § 1681a(d).

18.    The Ninth Circuit has recognized the FCRA's broad definition. For example, it has noted that when a consumer reporting agency reports to a third party nothing more than the

4

*absence* of enough information to formulate a credit score, that notification itself can be a "consumer report."[1]

19.     Plaintiff's lawsuit arises at the nexus of a CRA's obligation to follow reasonable policies and procedures when it permits disclosure of consumer reports pursuant the exclusively enumerated permissible purposes under 15 U.S.C. § 1681e(a) and NRS 598C.140, and a data-furnishers' obligation to periodically update consumer account data under 15 U.S.C. § 1681s-2(a).[2]

20.     For a certain subset of furnishers, Experian appears to relax its privacy protections by failing to require that these furnishers explain the permissible purpose for which any particular consumer report was obtained.  Moreover, Experian often fails to disclose all inquiries of these self-chosen furnishers to consumers when it is obligated to do so under 15 U.S.C. § 1681g and NRS 598C.130. This, in turn, confounds individual consumers' rights to protect their privacy by reviewing information in their file for evidence of impermissible use or outright fraud.

### *A CRA's Duties to Maintain Reasonable Procedures*

21.     CRAs must maintain reasonable procedures to ensure that third party disclosures are made exclusively for permissible purposes, and can be liable for disclosing information to a third party who does not have a permissible purpose.  15 U.S.C. § 1681e(a).

22.     Prior to providing a consumer's credit information to a third party, a CRA must first obtain a certification from each third party as to "the purposes for which [credit]

---

[1] *See Reynolds v. Hartford Financial Services Group, Inc.*, 435 F.3d 1081, 1094 (9th Cir. 2006), *rev'd on other grounds*, 551 U.S. 47 (2007).

[2] *See, e.g.*, 15 U.S.C. § 1681s-2(a)(3)-(4).  Plaintiff's allegations are not brought under any provision of 15 U.S.C. § 1681s-2(a), but she cites provisions of that subsection of the FCRA for illustrative purposes.

information is sought," as well as a certification that the information "will be used for no other purpose." 15 U.S.C. § 1681e(a).

23.     If a CRA has "reasonable grounds" to believe that information will not be used for a permissible purpose, it must not furnish a report to that third party. 15 U.S.C. § 1681e(a). Pursuant to *Pintos v. Pacific Creditor's Ass'n*, however, to avoid liability, a CRA must do more than claim reliance on a third party's "general promise to obey the law."[3]

24.     On information and belief, CRAs often charge a fee to third parties to disclose a consumer's credit information, or include access to certain credit information in a contractual agreement. However, the FCRA's restrictions on disclosure – and imposition of liability for failure to disclose – prevent CRAs from pursuing inappropriate monetary gains at the expense of a consumer's privacy. Compliance with these requirements also ensures that, prior to furnishing a consumer's credit information to any third party, a CRA has, or should have, a list of all the permissible purposes for which each third party will use a consumer's private credit information.

25.     Experian has acknowledged its obligation to obtain a certification from each third party indicating the purpose for which a consumer's credit can be used pursuant to 15 U.S.C. § 1681e(a), and has asserted that it maintains a record of such certifications.[4] Experian has also claimed that it "requires any client to identify a permissible purpose before [it] will provide that client consumer credit data[.]"[5] Moreover, Experian claims to "provide[] different types of data depending on the client's permissible purpose."[6]

---

[3] *Pintos v. Pacific Creditor's Ass'n*, 605 F.3d 665, 675-76 (9th Cir. 2009).
[4] *See* Sept. 30, 2009 Declaration of Mary Methvin in Support of Experian's Motion for Summary Judgment, *Pappas v. U.S. Bank Home Mortgage N.A. et al.*, No. 15-cv-8115, ECF Dkt. 103-1, ¶ 41 (N.D. Ill. Oct. 3, 2016) ("Methvin Declaration"). A true and correct copy of the Methvin Declaration is attached as **Exhibit A**
[5] *Id.*
[6] *Id.*

26.    However, on information and belief, Experian does not always require a third party to specify the permissible purpose for which a credit inquiry is made.

27.    For example, Experian has stated in the past that "In the cases of subscribers with whom Experian has had a long-term relationship and well-known subscribers whose businesses routinely involve permissible purposes, such as banks or credit card companies, once Experian verifies that a subscriber has a permissible purpose – and in the absence of further information giving Experian reason to doubt that the subscriber is requesting the information for permissible purposes – it is entitled to, and does, rely on the certification in subsequent requests."[7]

28.    On information and belief, after the *Pintos* decision, Experian took steps to educate subscribers and Experian employees about the *Pintos* decision, its holdings, and its implications.

29.    To do so, Experian "sent a recertification notice to *collection* subscribers" in January 2011.[8]

30.    There is no indication, however, that Experian imposed additional recertification obligations on its "well-known" or "long-standing" subscribers, for which it assumed, without further inquiry, that they had a permissible purpose for the account inquiry.[9]

31.    Experian's failure to require a permissible purpose for disclosure of credit reporting data for a self-chosen subset of its business subscribers is especially problematic, in light of its claims elsewhere that it has numerous systems in place "to ensure the maximum possible

---

[7] Dec. 4, 2009 Declaration of David Browne, *Sheldon v. Experian*, No. 08-05193, ECF Dkt. 39-1, at ¶ 9 (E.D. Pa. Dec. 4, 2009) ("Browne Declaration").  A true and correct copy of the Browne Declaration is attached as **Exhibit B**.
[8] *Id.* (emphasis added).
[9] *See* Browne Declaration, at ¶ 9.  The *Pintos* decision was issued on April 30, 2009, months prior to the Browne Declaration.  Although *Pintos* was amended on May 21, 2010, the operative language cited above remained.

accuracy of reported credit information," which include "subjecting all incoming data to numerous automated systems and checks designed to prevent errors."[10]

32.    For example, Experian does not store its consumer information in complete credit reports.[11]  Instead, it "assembles them "at the time of inquiry, utilizing the identification information that is provided by the requestor and comparing and contrasting the inquiry data to the information contained within" Experian's files at that moment in time.[12] While Experian stores consumer trade line, inquiry, and public record information in separate tables, "The respective items in each table point to the associated identification information that was reported from the furnisher with each item."[13]

33.    Experian also claims to employ automated systems in connection with its public records data, specifically bankruptcy data.[14]  Experian's public records vendor, LexisNexis Risk & Information Analytics Group, Inc. ("Lexis"), apparently reports to Experian "both the type of bankruptcy the consumer filed as well as the major events in a consumer's bankruptcy proceeding (e.g. filed, dismissed, discharged)."[15]

34.    Experian claims that its internal systems are designed so that "when Experian learns from Lexis that [a] consumer's bankruptcy was discharged, any individual account[s] that are reporting as included in bankruptcy will automatically be updated to report as discharged through bankruptcy reporting at the account-level (*e.g.* Chapter 13) matches the type of

---

[10] Browne Declaration, at ¶ 7.

[11] Declaration of Anna Simmons in Support of Experian's motion for Summary Judgment, *Hannon v. Northeast Credit & Collections*, No. 16-cv-1814-APG-VCF ("*Hannon*"), ECF Dkt. 66, at ¶ 6 ("Simmons Declaration").  A copy of the Simmons Hannon Decl. is attached as **Exhibit C**.

[12] Declaration of Kimberly Hughes in support of Experian's response to motion to compel, *Dixon v. Experian Information Solutions, Inc.*, No. 13-cv-227-PPS-PRC, (N.D. Ind. June 25, 2014), ECF Dkt. 42-2, at ¶ 7 ("Hughes Declaration").  A copy of the Hughes Declaration is attached as **Exhibit D**.

[13] *Id.* at ¶ 8.

[14] *See* Methvin Declaration at ¶ 5.

[15] *Id.*; *see also* Simmons Declaration, at ¶ 22.

bankruptcy reporting in the public records section from Lexis."[16]  Experian "also obtains information regarding consumer bankruptcies from data furnishers through a system called e-Oscar," an industry standard format which permits data furnishers "to transmit information about consumers' credit accounts, including the accounts' inclusion in bankruptcy."[17]

35.  On information and belief, Experian's "checks and balances" are not reasonable for all purposes, or even the purposes for which they were designed.[18]  At a minimum, however, Experian has claimed that it has the *capacity* to create a system of checks and balances, however flawed, to streamline and correct tradeline data, including automating its systems to coordinate and reconcile bankruptcy data from its public records vendor with individual consumer tradelines.

***Consumer reporting agency duties under NRS 598C***

36.  Similar to the FCRA, NRS 598C defines "consumer report" as "any communication, written or oral, by a reporting agency regarding the payment history of a particular consumer, including information regarding his or her credit worthiness, credit standing or credit capacity, which is intended for present or future use in whole or in part to serve as a factor in determining the consumer's eligibility for: (a)  Credit or insurance to be used primarily for personal, family or household purposes; (b)  Purposes relating to employment; or (c)  Any other purpose authorized pursuant to 15 U.S.C. §§ 1681 et seq." NRS 598C.060.

---

[16] Methvin Declaration at ¶ 10.

[17] *See* Simmons Declaration, at ¶ 24.

[18] Indeed, conceits about the integrity of its internal reporting processes have led it to commit systematic inconsistencies in reporting of disputed tradeline data which allegedly violate the FCRA.  *See, e.g., Cardinali v. Experian*, No. 16-cv-2046-JAD-NJK, ECF Dkt 57 (D. Nev. Apr. 19, 2017); *Ashcraft v. Welk Resort Group, Corp.*, No. 16-cv-2978-JAD-NJK, ECF Dkt. 24 (D. Nev. May 9, 2017).

37. Under NRS 598C.140(1), "A reporting agency may furnish a consumer report concerning a consumer for an extension of credit which he or she did not initiate only if (a) The contemplated transaction represents a firm offer of credit to those consumers who meet specific criteria determined by the person; or (b) He or she has not requested that his or her name and address be excluded from any list to be provided for such a purpose."

38. While NRS 598C.140(2) does not prohibit a reporting agency to "from furnishing information to review an account," it may only do so "if there is an existing business relationship." NRS 598C.140(2).

### *A Furnisher's Acquisition of Consumer Reports for Permissible Purposes*

39. A third party may obtain a consumer disclosure only for an explicitly enumerated permissible purpose. For example, information may be provided to "a person which [the CRA] has reason to believe (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." 15 U.S.C. § 1681a(3)(A). A third party may obtain private consumer credit data when that third party "otherwise has a legitimate business need for the information (i) in connection with a business transaction that is initiated by the consumer; or (ii) to review an account to determine whether the consumer *continues* to meet the terms of the account." 15 U.S.C. § 1681b(a)(3)(F)(ii) (emphasis added).

40. Where an individual consumer has no *in personam* obligation on any credit account with a third party, none of the permissible purposes above would justify making a credit pull of a consumer's private, personal credit information. This would be the case if a consumer previously had a credit account with a third party, but the account was closed or had been

discharged in bankruptcy.  In either case, individual consumers would have a reasonable expectation of privacy that their private consumer data would not be disclosed.

41.    Data furnishers like SSSCU often obtain consumer reports for purposes of "account review."  Furnishers who report data to CRAs are subject to a series of reporting obligations under the FCRA.  For example, if the "completeness or accuracy of any information furnished by any person to any [CRA] is disputed to such person by a consumer," the furnisher may not provide that information without notifying the CRA that the information is disputed.  15 U.S.C. § 1681s-2(a)(3).  Additionally, where a consumer voluntarily closes an account held with that furnisher, the furnisher "shall" notify a CRA "of the voluntary closure of the account by the consumer, in information regularly furnished for the period in which the account is closed."  15 U.S.C. § 1681s-2(a)(4).

42.    In addition to these statutory duties, data furnishers provide updated consumer credit data to Experian on a routine basis, and on information and belief include in these routine updates indication if one or all accounts with a particular consumer were closed.

43.    Thus, Experian is routinely and timely notified of changes to consumer accounts, and could update its internal records if it wished.

44.    Given Experian's claimed expertise in designing automated systems for updating consumer tradeline data, on information and belief, Experian could design and implement an automated system that incorporates routine updates Experian receives from its subscribing furnishers.

45.    Since Experian is obligated to identify the "permissible purpose" for each consumer disclosure, Experian can ascertain (1) why a consumer report is being requested, and (2)

refer to its own internal records to determine whether the third party's stated purpose is permissible in light of the account statuses that third party maintained with the consumers in question.

### A CRA's Disclosures to Individual Consumers

46. Finally, the FCRA also entitles the consumer to take an active role in the protection of his or her sensitive personal information and guard against identity theft, by giving the consumer a right to request "All information in the consumer's file at the time of the request." 15 U.S.C. § 1681g(a)(1). The disclosed information must include an identification of each person who "procured" a consumer report for employment or another purpose. 15 U.S.C. § 1681g(a)(3). The disclosure must also include "[a] record of all inquiries received by the agency during the 1-year period preceding the request that identified the consumer in connection with a credit or insurance transaction that was not initiated by the consumer." 15 U.S.C. § 1681g(a)(5).

47. Disclosing sufficient information about these third parties – including the specific purpose for which they obtained the consumer's information – can assist consumers in determining whether their identity has been compromised, or whether a CRA has made any disclosures for an impermissible purpose. *See also* 15 U.S.C. § 1681c-1(a)-(b) (permitting consumers to obtain additional copies of their consumer disclosures at no charge in the case of suspected identity theft).

### Damages from Violations of 15 U.S.C. §§ 1681b(f) and 1681e(a)

48. On information and belief, Experian has willfully decided not to comply with the FCRA, specifically 15 U.S.C. §§ 1681b(f) and 1681e(a), and the binding Ninth Circuit precedent in *Pintos*, by permitting a select group of data furnishers to access consumer credit on a

no-questions-asked basis.   Experian's violation is also willful because Experian subsequently failed to disclose the credit pull to consumers in disclosures made explicitly, or under the color of, 15 U.S.C. § 1681g, thus precluding consumers from knowing how their privacy was violated.

49.   Alternatively, Experian's conduct was willful because although it has the claimed capacity to create complex automated systems for updating other aspects of its consumer tradeline data, but has failed to implement a system that ensures that each request for a consumer report is made for a permissible purpose.

50.   Experian's failure to follow reasonable policies and procedures in ensuring that third parties like SSSCU continue to have a permissible purpose to access individual consumer reports violates a consumer's statutory right to privacy because the consumer is deprived of the opportunity to "meaningfully authorize" the disclosures which have been made to third parties.[19]  Other Courts of Appeal have recognized that "unauthorized *disclosures* of information' have long been seen as injurious," and that "with the passage of the FCRA, Congress established that the unauthorized dissemination of personal information by a credit reporting agency causes an injury in and of itself – whether or not the disclosure of that information increased the risk of identity theft or some other future harm."[20]

51.   One recent Nevada District Court, *In re Ocwen Loan Servicing LLC Litig.*, applied the reasoning of *Syed* to conclude that "The FCRA is clear that account review inquiries are permissible to determine whether the consumer *continues* to meet the terms of the

---

[19] *See, e.g., Syed v. M-I LLC*, 846 F.3d 1034 (9th Cir. 2017), *as amended*, 853 F.3d 492 (9th Cir. 2017).  *See also Toldi v. Hyundai Capital America*, No. 16-cv-1877-APG-GWF, 2017 WL 736882, at *2 (D. Nev. Feb. 23, 2017) (noting that, in context of suit brought under the Telephone Consumer Protection Act, "when a person must endure the bother of unwanted calls in the privacy of her home, her harm is similar to other traditional injuries the courts have long recognized, such as invasion of privacy and nuisance.").

[20] *In re Horizon Healthcare Services Inc. Data Breach Litig.*, 846 F.3d 625, 639-640 (3d Cir. 2017) (emphasis in original).

account," and that "[t]he operative word in this provision is "continues," which indicates Congress recognized that once an individual terminated her relationship with a lender it was no longer permissible for the lender to access the account (precisely because the lender would have no reason for doing so)."[21]  The *In re Ocwen* court further noted that "Congress recognized the harm that results to consumers when they do not give consent to purported credit pulls, even when the reason for the pull is permissible under the statute."  By permitting continued access to individual consumers' private information, Experian subjects each consumer to a concrete informational injury.

52.    Data furnishers who obtain a consumer's account for purposes of "account review" when they have no ongoing account relationship with the consumer also willfully violate the FCRA because these data furnishers know whether or not they have any such relationship with that consumer.  Such violations of Section 1681b(f) violate a consumer's reasonable expectation of privacy, resulting in a concrete informational injury.[22]

### Scope of Claims Under 15 U.S.C. §§ 1681b, 1681e(a), and NRS 598C.140

53.    Plaintiff brings this action on behalf of herself and a class of similarly situated individuals ("Class 1").  Plaintiff's specific class definition appears below in paragraph 86; but for purposes of illustration, Class 1 includes consumers for whom Experian permitted third parties who had at least one open account with a data furnisher to access her private credit information without an adequate permissible purpose after that account had closed, in violation of 15 U.S.C. §§ 1681b(f) and 1681e(a).  Plaintiff has suffered a concrete informational injury because she had a legitimate expectation of privacy ensured by

---

[21]  No. 3:16-cv-200-MMD-WGC, 2017 WL 1289826 (D. Nev. Mar, 3, 2017) (emphasis in original).  Actions consolidated into the matter include No. 3:16-cv-483-MMD-WGC, No. 16-cv-498-MMD-WGC, and No. 3:16-cv-603-MMD-WGC.

[22]  Data furnishers who obtain a consumer report under false pretenses are also liable when their violation is willful.  15 U.S.C. § 1681q; *Hansen v. Morgan*, 582 F.2d 1214, 1220 (9th Cir. 1978).

Congress, which Experian violated.  Additionally, because Experian's conduct was willful, Plaintiff and all members of Class 1 are entitled to statutory damages under 15 U.S.C. § 1681n.

54.    Plaintiff also brings this action on behalf of herself and a sub-class of individuals ("Class 2").  Plaintiff's specific class definition appears below in paragraph 103; but for purposes of illustration Class 2 includes consumers for whom Defendant SSSCU violated 15 U.S.C. § 1681b(f) when it accessed consumer credit data from Experian for individuals who did not have at least one "open" account with SSSCU at the time the pull was made.  Plaintiff has suffered a concrete informational injury because she had a legitimate expectation of privacy ensured by Congress, which SSSCU violated.  Additionally, because SSSCU's conduct was willful, Plaintiff and all members of Class 2 are entitled to statutory damages under 15 U.S.C. § 1681n.

55.    Plaintiff also brings this action on behalf of herself and a sub-class of individuals ("Class 3").  Plaintiff's specific class definition appears below in paragraph 120; but for purposes of illustration, Class 3 includes consumer for whom Defendant Experian violated NRS 598C.140 when it permitted third parties who had at least one open account with a data furnisher to access her private credit information without an adequate permissible purpose after that account had closed.  Plaintiff has suffered a concrete informational injury because she had a legitimate expectation of privacy ensured by the Nevada legislature, which Experian violated.  Additionally, because Experian's conduct was willful, Plaintiff and all members of Class 3 punitive damages under NRS 598C.190(2).

56.    Although Ms. Travers's factual allegations are necessarily detailed, these facts have been

presented merely to illustrate how Experian and SSSCU's statutory violations result in concrete information harm.  There are specific commonalities between Ms. Travers' fact pattern and all three classes: (1) consumers who once had, but presently do not have, any ongoing payment obligation with a particular data furnisher, yet (2) that furnisher obtained their consumer disclosure from Experian without a permissible purpose.

### *Plaintiff's Specific Allegations*

### SSSCU's Impermissible Pulls of Ms. Travers's Consumer Disclosures

57.    On or about 8/29/2011, Plaintiff filed for Chapter 13 bankruptcy.  At the time, she had three accounts with SSSCU.  Of these accounts, one had been closed in 2007.  Plaintiff included the other two accounts in her Chapter 13 bankruptcy.

58.    In 2011, after Plaintiff filed for bankruptcy, she was told by an SSSCU representative that she would have to close all of her SSSCU accounts due to the fact that she filed bankruptcy.  Thus, SSSCU represented to Plaintiff as early as 2011 that it wished to terminate its account relationship with her.

59.    On July 20, 2015, Plaintiff received her Chapter 13 bankruptcy discharge, which included a discharge of her two remaining SSSCU accounts.

60.    As of July 20, 2015, all three of the SSSCU accounts reported on Ms. Travers's Experian credit reports had been either closed or discharged.

61.    Thus, as of the date of her Chapter 13 bankruptcy discharge, SSSCU had no account relationship with Ms. Travers.

62.    Ms. Travers has not had an account relationship with SSSCU at any point since that date.

63.    Nevertheless, on August 3, 2016, more than a year after any account relationship with Ms. Travers would have terminated, and without any conceivable permissible purpose, Silver State accessed an Experian "Bullseye" for Ms. Travers.

64.    The "Bullseye" is a "consumer report" for purposes of 15 U.S.C. § 1681a(d) because it contained data related to Ms. Travers's account history, her current address, and other information.  This information bore on Mrs. Travers's credit standing, character, general reputation, personal characteristics, and/or mode of living.

65.    On information and belief, a record of SSSCU's August 3, 2016 inquiry, like all other inquiries made by third parties for individual consumer information, was stored in Experian's files.

66.    On August 4, 2016, Ms. Travers filed her Complaint in a related litigation matter, *Travers v. State Collection Service, Inc.* ("Related Litigation").[23]  Therein, she sued, *inter alia*, SSSCU and Experian.[24]  Ms. Travers served the Complaint on Silver State on August 12, 2016.

67.    On or about November 22, 2016, Experian produced certain "non-confidential" documents to all parties in the Related Litigation.  Included in this production were two consumer disclosures, or "CDIs," dated October 7, 2016 and October 29, 2016, respectively.  Both documents were styled "Your personal credit report," and indicated that "in response to your recent request, we're pleased to send you this credit report."

68.    Both "personal credit reports" included a list of "requests for your credit history."  This list indicated that Experian makes "your credit history available to your current and

---

[23] No. 16-cv-1848-RFB-PAL, ECF Dkt. 1 (D. Nev. Aug. 4, 2016).
[24] Related Litigation, ECF Dkt. 1.

prospective creditors and employers as allowed by law.  Experian may list these inquiries for up to two years."

69.    However, although Experian would have had evidence of the August 3, 2016 SSSCU inquiry in its files, neither "personal credit report" included the August 3, 2016 SSSCU credit inquiry.

70.    On or about February 28, 2017, less than a week before SSSCU's 30(b)(6) deposition in the Related Litigation, SSSCU once again obtained an Experian "Bullseye."  This consumer report contained the same type of information as the August 3, 2016 "Bullseye."

71.    On information and belief, Experian permitted SSSCU to access an unlimited number of Experian "Bullseye" consumer reports without requiring a permissible purpose.

### Experian's Liability to Ms. Travers

72.    Experian's failure to fully and adequately protect Ms. Travers's private information from impermissible disclosure to third parties like SSSCU violated 15 U.S.C. §§ 1681b(f) and 1681e(a), and NRS 598C.140.  Specifically, Experian failed to follow reasonable procedures to ensure that the furnishing of consumer reports were limited to the purposes listed under 15 U.S.C. § 1681b and NRS 598C.140.

73.    Experian also violated 15 U.S.C. §§ 1681b(f) and 1681e(a), and NRS 598C.140, because it had reasonable grounds to believe that SSSCU did not have a permissible purpose to access either the August 3, 2016, or February 28, 2017, Bullseye consumer reports.

74.    Experian's violations were willful, because on information and belief it was aware of its obligation to ensure that SSSCU had a permissible purpose as a perquisite to accessing Plaintiff's consumer reports, but permitted SSSCU to access the Bullseye consumer

reports whenever it wanted, regardless of whether SSSCU had an account relationship with Plaintiff.

75. Alternatively, Experian's violations were also willful because Experian suppressed disclosure of the August 3, 2016 inquiry on Plaintiff's October 7, 2016 and October 29, 2016 "personal credit reports," thus denying Plaintiff information sufficient to permit her to make an independent inquiry of either credit pull.  Indeed, Plaintiff only learned of the inquiry at a later stage of the Related Litigation.

76. Alternatively, Experian's violations were willful because Experian has claimed the ability to reconcile third party public records information with individual consumer tradelines, and has failed to implement a similar process to ensure that consumer disclosures made to third parties are made for permissible purposes in all occasions, including those where the third party has no account relationship with the consumer.

77. As a result of Experian's conduct, Plaintiff has suffered a concrete informational harm to her Congressionally protected privacy interests.  Because Experian's conduct was willful, Experian is liable for statutory damages under 15 U.S.C. § 1681n, and punitive damages under NRS 598C.190(2).

78. Experian's actions required Plaintiff to retain an attorney to prosecute this dispute, and has incurred attorney's fees and costs as a result, recoverable under 15 U.S.C. § 1681n and NRS 598C.190(3).

### SSSCU's Liability to Ms. Travers

79. SSSCU violated 15 U.S.C. § 1681b(f) because when it requested and obtained the August 3, 2016 and/or February 28, 2017 Bullseye consumer reports, it knew it did not have an

account relationship with Ms. Travers, and had had no such relationship for as little as one year and as much as almost five years.[25]

80. SSSCU's conduct was willful because at the time it accessed Ms. Travers's consumer reports, SSSCU knew it did not have an account relationship with Ms. Travers, and did not have another permissible purpose for accessing Ms. Travers's private consumer data from Experian.

81. SSSCU's conduct was also willful because it accessed Ms. Travers's consumer reports on more than one occasion.

82. As a result of this conduct, Plaintiff has suffered a concrete informational harm to her Congressionally protected privacy interests.  Because SSSCU's conduct was willful, SSSCU is liable for statutory damages under 15 U.S.C. § 1681n.

83. Plaintiff has been required to retain an attorney to prosecute this dispute, and has incurred attorney's fees and costs as a result, recoverable under 15 U.S.C. § 1681n.

### *Class Action Allegations*

### **Class 1 – Experian's Violations of 15 U.S.C. §§ 1681b(f) and 1681e(a)**

84. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

85. Plaintiff brings this action on behalf of themselves and on behalf of all others similarly situated ("Class 1").

//

//

//

---

[25] Alternatively, SSSCU may have violated 15 U.S.C. § 1681q because it obtained Ms. Travers's consumer reports under false pretenses.  Plaintiff reserves the right to amend this complaint to allege violations of 15 U.S.C. § 1681q as circumstances warrant.

86.     Plaintiff represents, and is a member of Class 1, consisting of:

All persons with addresses within the United States who within the past two (2) years on or before February 28, 2017, (i) had no ongoing payment obligation to a particular third party, and (ii) Experian permitted that third party to access their consumer report, (iii) without a permissible purpose or written authorization.

87.     Experian, SSSCU, and their respective employees or agents are excluded from Class 1.

88.     Plaintiff does not know the number of members in Class 1, but believes the Class 1 members number in the thousands, if not more.  Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

89.     Plaintiff and members of Class 1 were harmed by the acts of Experian in at least the following ways: Experian, either directly or through its agents, violated 15 U.S.C. §§ 1681b(f) and 1681e(a) by failing to fully and adequately protect Plaintiff and Class 1 members' private information from impermissible disclosure to third parties by failing to follow reasonable procedures to ensure that the furnishing of consumer reports were limited to the purposes listed under 15 U.S.C. § 1681b, or because Experian had no reasonable grounds to believe that certain third parties had any permissible purpose to access Plaintiff and Class 1 members' consumer reports.  Plaintiff and Class 1 members suffered concrete informational injuries because they had Congressionally protected privacy interests, which Experian violated by failing to ensure that third parties had a permissible purpose prior to providing access to consumers' protected information.

90.     This class allegation seeks recovery of statutory and punitive damages on behalf of Class 1, declarations that Experian's conduct common to all class members violated the FCRA, any relief the Court deems appropriate under Federal Rule of Civil Procedure 23(b)(2), and reasonable attorney's fees and costs.  Plaintiff expressly does not intend to request any recovery for personal injury and claims related thereto.  Plaintiff reserves the right to

expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

91. The joinder of Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the court. The members of Class 1 can be identified through Experian's records or Experian's agents' records.

92. There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Class predominate over questions which may affect individual Class members, including the following:

   a.    Whether, within the two years prior to February 28, 2017, Experian or its agents violated 15 U.S.C. §§ 1681b(f) and 1681e(a) by permitting third parties without an ongoing right to payment from Plaintiff or Class 1 members access to access Plaintiff or Class 1 members' consumer reports without a permissible purpose;

   b.    Whether Experian's policies and procedures to ensure compliance with 15 U.S.C. § 1681b were reasonable under 15 U.S.C. § 1681e(a); and

   c.    Whether Plaintiff and Class 1 members were damaged thereby, and the extent of damages for such violations.

93. Plaintiff is typical of Class 1 members in that she suffered harm resulting from Experian's failure to comply with 15 U.S.C. §§ 1681b(f) and 1681e(a).

94. Plaintiff will fairly and adequately represent and protect the interest of Class 1 in that she has no interests antagonistic to any member of Class 1.

95.     Plaintiff and the members of Class 1 have all suffered irreparable harm as a result of Experian's unlawful and wrongful conduct; namely they each lost their Congressionally guaranteed right to privacy under 15 U.S.C. §§ 1681b and 1681e(a).  As a result, all Class 1 members have lost a benefit conferred on them by Congress, which can never be recovered.  Absent a class action, Class 1 will continue to face the potential for irreparable harm.  In addition, these violations of law will be allowed to proceed without remedy, and Experian will likely continue such illegal conduct.  These actions will likely cause systematic deficiencies which continue to cause consumers to suffer from concrete informational harms.

96.     Thus, Plaintiff and Class 1 members request, in addition to their claims for damages, a declaration from the Court that in failing to follow reasonable procedures to ensure that consumer credit reports were furnished to third parties only for a permissible purpose, Experian violated §§ 1681b(f) and 1681e(a).  A declaration will prevent Experian from engaging in similar conduct for other consumers in the future.  Because of the size of the individual Class 1 members' claims, few, if any, of the Class 1 members could afford to seek legal redress for the wrongs complained of herein.

97.     Class certification is also appropriate because Experian has acted on grounds generally applicable to Class 1, making appropriate equitable injunctive relief with respect to Plaintiff and the class members available under Federal Rule of Civil Procedure 23(b)(2).

98.     Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the FCRA.

99.     A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Experian to comply with federal

law.  The interest of Class 1 members in individually controlling the prosecution of separate claims against Experian is small because the maximum statutory damages in an individual action for FCRA violations are minimal.  Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

100.    Experian has acted on grounds generally applicable to Class 1.

### Class 2 – SSSCU's Violations of 15 U.S.C. § 1681b(f)

101.    Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

102.    Plaintiff brings this action on behalf of herself and on behalf of all others similarly situated ("Class 2").

103.    Plaintiff represents, and is a member of Class 2, consisting of:

All persons whose consumer reports were accessed by SSSCU at a time when SSSCU did not have an ongoing right to receive payment from said person during the two years prior to February 28, 2017, and for which SSSCU did not otherwise have a permissible purpose to access that particular consumer report.

104.    Experian, SSSCU and their respective employees or agents are excluded from Class 2.

105.    Plaintiff does not know the number of members in Class 2, but believes the Class 2 members number in the hundreds, if not more.  Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

106.    Plaintiff and members of Class 2 were harmed by the acts of SSSCU in at least the following ways: SSSCU, either directly or through its agents, violated 15 U.S.C. § 1681b(f) when it accessed Plaintiff and Class 2 members' consumer reports at a time SSSCU did not have an ongoing right to receive payments from either Plaintiff or any member of Class 2, and did not otherwise have a permissible purpose to access that consumer report.  Plaintiff and Class 2 members suffered concrete informational injuries

because they had Congressionally protected privacy interests, which SSSCU violated by accessing their personal information without a permissible purpose.

107.    This class allegation seeks recovery of statutory and punitive damages on behalf of Class 2, declarations that SSSCU's conduct common to all class members violated the FCRA, any relief the Court deems appropriate under Federal Rule of Civil Procedure 23(b)(2), and reasonable attorney's fees and costs.  Plaintiff expressly does not intend to request any recovery for personal injury and claims related thereto.  Plaintiff reserves the right to expand the Class 2 definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

108.    The joinder of Class 2 members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the court.  The members of Class 2 can be identified through SSSCU's records or SSSCU's agents' records.

109.    There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Class predominate over questions which may affect individual Class 2 members, including the following:

    a.    Whether, within the two years prior February 28, 2017, SSSCU or its agents violated 15 U.S.C. § 1681b(f) when they accessed Plaintiff or Class 2 members' consumer reports at a time when Plaintiff or Class 2 members had no account relationship with SSSCU;

    b.    Whether SSSCU did not otherwise have a permissible purpose to access Plaintiff or Class 2 members' consumer reports; and

     c.      Whether Plaintiff and Class 2 members were damaged thereby, and the extent of damages for such violations.

110.    Plaintiff is typical of Class 2 members in that she suffered harm resulting from SSSCU's impermissible pulls of her consumer reports.

111.    Plaintiff will fairly and adequately represent and protect the interest of Class 2 in she has no interests antagonistic to any member of Class 2.

112.    Plaintiff and the members of Class 2 have all suffered irreparable harm as a result of SSSCU's unlawful and wrongful conduct; namely they each lost their Congressionally guaranteed right to privacy under 15 U.S.C. § 1681b. As a result, all Class 1 members have lost a benefit conferred on them by Congress, which can never be recovered. Absent a class action, Class 1 will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and SSSCU will likely continue such illegal conduct. These actions will likely cause systematic deficiencies and continue to cause consumers to suffer concrete informational harms.

113.    Thus, Plaintiff and Class 2 members request, in addition to their claims for damages, a declaration from the Court that in accessing Plaintiff or Class 2 members' consumer reports at a time when Plaintiff or Class 2 members had no account relationship with SSSCU, where SSSCU did not otherwise have a permissible purpose to access Plaintiff or Class 2 members' consumer reports, SSSCU violated 15 U.S.C. § 1681b(f). A declaration will prevent SSSCU from engaging in similar conduct for other consumers in the future. As the size of the individual Class 2 member's claims, few, if any, of the Class 2 members could afford to seek legal redress for the wrongs complained of herein.

114. Class certification is also appropriate because SSSCU has acted on grounds generally applicable to Class 2, making appropriate equitable injunctive relief with respect to Plaintiff and the class members available under Federal Rule of Civil Procedure 23(b)(2).

115. Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the FCRA.

116. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce SSSCU to comply with federal law.  The interest of Class 2 members in individually controlling the prosecution of separate claims against SSSCU is small because the maximum statutory damages in an individual action for FCRA violations are minimal.  Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

117. SSSCU has acted on grounds generally applicable to Class 2.

## Class 3 – Experian's Violations of NRS 598C.140

118. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

119. Plaintiff brings this action on behalf of themselves and on behalf of all others similarly situated ("Class 3").

120. Plaintiff represents, and is a member of Class 3, consisting of:

All persons with addresses within the State of Nevada who within the past two (2) years on or before February 28, 2017, (i) had no ongoing payment obligation to a particular third party, and (ii) Experian permitted that third party to access their consumer report, (iii) without a permissible purpose or written authorization.

121. Experian, SSSCU, and their respective employees or agents are excluded from Class 3.

122.   Plaintiff does not know the number of members in Class 3, but believes the Class 3 members number in the thousands, if not more. Thus, this matter should be certified as a Class action to assist in the expeditious litigation of this matter.

123.   Plaintiff and members of Class 3 were harmed by the acts of Experian in at least the following ways: Experian, either directly or through its agents, violated NRS 598C.140 by failing to fully and adequately protect Plaintiff and Class 3 members' private information from impermissible disclosure to third parties, or because Experian had no reasonable grounds to believe that certain third parties had any permissible purpose to access Plaintiff and Class 3 members' consumer reports. Plaintiff and Class 3 members suffered concrete informational injuries because the Nevada Legislature had provided them protected privacy interests, which Experian violated by failing to ensure that third parties had a permissible purpose prior to providing access to consumers' protected information.

124.   This class allegation seeks recovery of punitive damages on behalf of Class 3, declarations that Experian's conduct common to all class members violated the NRS 598C, any relief the Court deems appropriate under Federal Rule of Civil Procedure 23(b)(2), and reasonable attorney's fees and costs. Plaintiff expressly does not intend to request any recovery for personal injury and claims related thereto. Plaintiff reserves the right to expand the Class definition to seek recovery on behalf of additional persons as warranted as facts are learned in further investigation and discovery.

125.   The joinder of Class members is impractical and the disposition of their claims in the Class action will provide substantial benefits both to the parties and to the court. The

members of Class 3 can be identified through Experian's records or Experian's agents' records.

126.    There is a well-defined community of interest in the questions of law and fact involved affecting the parties to be represented. The questions of law and fact to the Class predominate over questions which may affect individual Class members, including the following:

d.    Whether, within the two years prior to February 28, 2017, Experian or its agents violated NRS 598C.140 by permitting third parties without an ongoing right to payment from Plaintiff or Class 3 members access to access Plaintiff or Class 3 members' consumer reports without a permissible purpose; and

e.    Whether Plaintiff and Class 3 members were damaged thereby, and the extent of damages for such violations.

127.    Plaintiff is typical of Class 3 members in that she suffered harm resulting from Experian's failure to comply with NRS 598C.

128.    Plaintiff will fairly and adequately represent and protect the interest of Class 3 in that she has no interests antagonistic to any member of Class 3.

129.    Plaintiff and the members of Class 3 have all suffered irreparable harm as a result of Experian's unlawful and wrongful conduct; namely they each lost their guaranteed right to privacy under NRS 598C.  As a result, all Class 3 members have lost a benefit conferred on them by the Nevada Legislature, which can never be recovered.  Absent a class action, Class 3 will continue to face the potential for irreparable harm.  In addition, these violations of law will be allowed to proceed without remedy, and Experian will likely continue such illegal conduct.   These actions will likely cause systematic

deficiencies which continue to cause consumers to suffer from concrete informational harms.

130.    Thus, Plaintiff and Class 3 members request, in addition to their claims for damages, a declaration from the Court that in failing to ensure that consumer credit reports were furnished to third parties only for a permissible purpose, Experian violated NRS 598C.  A declaration will prevent Experian from engaging in similar conduct for other consumers in the future.  Because of the size of the individual Class 3 members' claims, few, if any, of the Class 3 members could afford to seek legal redress for the wrongs complained of herein.

131.    Class certification is also appropriate because Experian has acted on grounds generally applicable to Class 3, making appropriate equitable injunctive relief with respect to Plaintiff and the class members available under Federal Rule of Civil Procedure 23(b)(2).

132.    Plaintiff has retained counsel experienced in handling class action claims and claims involving violations of the NRS 598C.

133.    A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Experian to comply with federal law.  The interest of Class 3 members in individually controlling the prosecution of separate claims against Experian is small because the maximum statutory damages in an individual action for NRS 598C violations are minimal.  Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

134.    Experian has acted on grounds generally applicable to Class 3.

**FIRST CAUSE OF ACTION – AGAINST EXPERIAN AND SSSCU**
**VIOLATION OF THE FCRA – 15 U.S.C. § 1681 *ET SEQ*.**
**(PLAINTIFF, CLASS 1, AND CLASS 2)**

135.  Plaintiff, Class 1, and Class 2 members incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

136.  The foregoing acts and omissions constitute numerous and multiple willful or reckless violations of the FCRA, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681 *et seq.*, including but not limited to 15 U.S.C. §§ 1681b and 1681e(a).

137.  As a result of each and every willful violation of the FCRA, Plaintiff, Class 1, and Class 2 members are entitled to statutory damages pursuant to 15 U.S.C. § 1681n(a)(1); punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

138.  Plaintiff, Class 1, and Class 2 members are also entitled to appropriate equitable injunctive relief, including orders preliminarily and permanently enjoining Experian and SSSCU from further engagement in the FCRA violations listed above.  Federal Rule of Civil Procedure 23(b)(2).

**SECOND CAUSE OF ACTION – AGAINST EXPERIAN**
**VIOLATION OF NRS 598C.140**
**(PLAINTIFF AND CLASS 3)**

139.  Plaintiff and Class 3 members incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

140.  The foregoing acts and omissions constitute numerous and multiple willful or reckless violations of NRS 598C, including but not limited to each and every one of the above-cited provisions of NRS 598C, including but not limited to NRS 598C.140.

141.   As a result of each and every willful violation of NRS 598C, Plaintiff and Class 3 are entitled to punitive damages pursuant to NRS 598C.190(2); and reasonable attorney's fees and costs pursuant to NRS 598C.190(3) from Experian.

142.   Plaintiff and Class 3 members are also entitled to appropriate equitable injunctive relief, including orders preliminarily and permanently enjoining Experian from further engagement in the NRS 598C violations listed above.  Federal Rule of Civil Procedure 23(b)(2).

**THIRD CAUSE OF ACTION – AGAINST EXPERIAN AND SSSCU
REQUEST FOR DECLARATORY RELIEF – 28 U.S.C. § 2201
(PLAINTIFF, CLASS 1, CLASS 2, AND CLASS 3)**

143.   Plaintiff, Class 1, Class 2, and Class 3 members incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

144.   The foregoing acts and omissions constitute numerous and multiple willful, reckless or negligent violations of the FCRA and/or NRS 598C, including but not limited to each and every one of the above-cited provisions of the FCRA, 15 U.S.C. § 1681 *et seq.* and NRS 598C.

145.   Plaintiff and Class 1 members are entitled to a declaration from the Court that in failing to follow reasonable procedures to ensure that consumer credit reports were furnished to third parties only for a permissible purpose, Experian violated §§ 1681b(f) and 1681e(a).

146.   Plaintiff and Class 2 members are entitled to a declaration from the Court that in accessing Plaintiff or Class 2 members' consumer reports at a time when Plaintiff or Class 2 members had no account relationship with SSSCU, where SSSCU did not otherwise have a permissible purpose to access Plaintiff or Class 2 members' consumer reports, SSSCU violated 15 U.S.C. § 1681b(f).

147.    Plaintiff and Class 3 members are entitled to a declaration from the Court that in failing to ensure that consumer credit reports were furnished to third parties only for a permissible purpose, Experian violated NRS 598C.

148.    Plaintiff and Class 1, 2, and 3 members are also entitled to appropriate equitable injunctive relief, including orders preliminarily and permanently enjoining Experian and/or SSSCU from further engagement in the FCRA violations listed above.  Federal Rule of Civil Procedure 23(b)(2).

149.    Plaintiff and Class 1, 2, and 3 members have incurred attorney's fees to prosecute this cause of action, and are entitled to reasonable attorney's fees and costs from Experian.

## **PRAYER FOR RELIEF**

Plaintiff and Class 1, 2, and 3 members (where applicable) respectfully request the Court grant them the following relief against Defendants:

### **FIRST CAUSE OF ACTION – AGAINST EXPERIAN AND SSSCU VIOLATION OF THE FCRA – 15 U.S.C. § 1681 *ET SEQ.* (PLAINTIFF, CLASS 1, AND CLASS 2)**

- award of statutory damages pursuant to 15 U.S.C. § 1681n(a)(1);

- an award of punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2);

- award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3);

- orders preliminarily and permanently enjoining Experian and/or SSSCU from engaging in the violations of the FCRA outlined above; and

- any other relief the Court may deem just and proper.

//

//

**SECOND CAUSE OF ACTION – AGAINST EXPERIAN
VIOLATION OF NRS 598C.140
(PLAINTIFF AND CLASS 3)**

- an award of punitive damages as the Court may allow pursuant to NRS 598C.190(2);

- award of costs of litigation and reasonable attorney's fees, pursuant to NRS 598C.190(3) and/or under NRS 598C.200(2) against Defendant for each incident of negligent noncompliance of NRS 598C;

- orders preliminarily and permanently enjoining Experian from engaging in the violations of NRS 598C outlined above; and

- any other relief the Court may deem just and proper.

**THIRD CAUSE OF ACTION – AGAINST EXPERIAN AND SSSCU
REQUEST FOR DECLARATORY RELIEF – 28 U.S.C. § 2201
(PLAINTIFF AND CLASSES 1 AND 2)**

- A declaration from the Court that in failing to follow reasonable procedures to ensure that consumer credit reports were furnished to third parties only for a permissible purpose, Experian violated §§ 1681b(f) and 1681e(a);

- A declaration from the Court that in accessing Plaintiff or Class 2 members' consumer reports at a time when Plaintiff or Class 2 members had no account relationship with SSSCU, where SSSCU did not otherwise have a permissible purpose to access Plaintiff or Class 2 members' consumer reports, SSSCU violated 15 U.S.C. § 1681b(f);

- A declaration from the Court that in failing to ensure that consumer credit reports were furnished to third parties only for a permissible purpose, Experian violated NRS 598C.

- orders preliminarily and permanently enjoining Experian and/or SSSCU from engaging in the violations of the FCRA outlined above;

34

- An award of costs of litigation and reasonable attorney's fees, pursuant to 15 U.S.C. § 1681n(a)(3) against Experian and/or SSSCU for each incident of willful noncompliance of the FCRA; and

- any other relief the Court may deem just and proper.

### <u>TRIAL BY JURY</u>

Pursuant to the seventh amendment to the Constitution of the United States of America, Plaintiff and Class members are entitled to, and demand, a trial by jury.

Dated: June 7, 2017                      Respectfully submitted,

                                         */s/ Miles N. Clark*
                                         Matthew I. Knepper, Esq.
                                         Miles N. Clark, Esq.
                                         KNEPPER & CLARK LLC
                                         10040 W. Cheyenne Ave., Suite 170-109
                                         Las Vegas, NV 89129

                                         Sean N. Payne, Esq.
                                         PAYNE LAW FIRM LLC
                                         9550 S. Eastern Ave. Suite 253-A213
                                         Las Vegas, NV 89123

                                         David H. Krieger, Esq.
                                         HAINES & KRIEGER, LLC
                                         8985 S. Eastern Avenue, Suite 350
                                         Henderson, Nevada 89123

                                         Attorneys for Plaintiff